### LEOPOLD J. KADISH *et al.*

*v.*

### THE GARDEN CITY EQUITABLE LOAN AND BUILDING ASSOCIATION *et al.*

*Filed at Ottawa, March 31, 1894.—Rehearing denied, October Term, 1894.*

1. HOMESTEAD LOAN ASSOCIATION—*mortgage of another corporation to secure bonds of a member—its validity.* Where a homestead loan association made loans to certain of its members for the use and benefit of a corporation, and took the bonds of such members secured by deed of trust of the corporation receiving the money, it was *held*, that the bonds and deed of trust were valid and enforcible.

2. A homestead loan association made a loan of money to two of its members for the use of a brewing company, which gave its deed of trust to the association to secure the loan, there being no fraud in the loan and nothing to mislead the parties in whose names the loan was made: *Held*, that as the brewing company could not avoid its deed of trust under the plea of *ultra vires*, such parties were also estopped from availing of the defense, and that the deed of trust might be foreclosed as against them and other creditors of the brewing company having notice of the rights of the loan association.

3. SAME—*corporations becoming members and borrowing money.* There is no express prohibition in the statute against corporations becoming members of loan and homestead associations for the purpose of borrow-

ing money, or against such associations loaning money for other than building purposes.

4. ULTRA VIRES—*acts of corporations—whether ultra vires.* Where acts of a corporation are spoken of as *ultra vires,* it is not intended that they are unlawful, or even such as the corporation can not perform, but merely that they are not within the powers conferred upon the corporation by the act of its creation, and are in violation of the trust reposed in the managing board by the shareholders, that the affairs shall be managed, and the funds applied solely for carrying out the object for which the corporation was created.

5. SAME—*when the defense may be interposed.* It is well settled, that a corporation can not avail itself of the defense of *ultra vires* when the contract has been, in good faith, fully performed by the other party, and the corporation has had the full benefit of the performance, and of the contract. The same rule holds *e converso.*

6. While contracts *ultra vires* remain executory, courts will interfere to prevent their enforcement on the application of a shareholder, or other authorized persons, but where a contract has been carried into effect, and the corporation has received the benefit of it, it can not plead the excess of its power in discharge of its liability. And if the other party has had the benefit of a contract fully performed by the corporation, he will not be heard to object that the contract and performance were not within the legitimate powers of the corporation.

7. The plea of *ultra vires* should not, as a general rule, prevail, whether interposed for or against a corporation, when it will not advance justice, but, on the contrary, will accomplish a legal wrong.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook County; the Hon. O. H. HORTON, Judge, presiding.

Messrs. KRAFT & KRAFT, for the appellants:

A corporation can not become a stockholder in another corporation, unless by power specially granted. *People* v. *Chicago Gas Trust Co.,* 130 Ill. 268; Morawetz on Private Corporations, secs. 431, 433; *Franklin Bank* v. *Commercial Bank,* 36 Ohio St. 350.

The loan being for an unauthorized purpose is illegal and not enforcible. *Medical Coll. Case,* 3 Whart. 445; *Heck* v. *McEwen,* 12 Lea, 97; *Eastern Plank Co.* v. *Baugher,*

KADISH *et al. v.* G. C. E. L. & B. ASSN. *et al.* 533

Brief for the Appellees.   Opinion of the Court.

14 N. Y. 546; Endlich on Building Associations, sec. 321; *Penn* v. *Bornman*, 102 Ill. 523; *St. Louis, J. & C. R. R. Co.* v. *Mathers*, 104 Ill. 257.

Mr. JULIUS STERN, for the appellees:

Right of building association to take mortgage of another, to secure loan, made to its members: *Juniata B. & L. Assoc.* v. *Mixell*, 84 Pa. St. 313; *Association* v. *Steele*, 11 W. N. C. (Pa.), 204.

Right of building association to make loans to non-members: *Park* v. *LaFayette B. Assoc.*, 81 Ind. 358.

Estoppel to avoid contract: *Mut. Life Ins. Co.* v. *Wilcox*, U. S. Circuit Court, N. D. Ills; 7th N. Y. W. L. R. Dig., 13; *Cunningham* v. *Mass. Springs & Ft. C. R. R. Co.*, 18 N. Y. S. 600; *Bond* v. *Terrell C. & M. Mfg. Co.*, 82 Texas, 309.

*Ultra Vires.* Anderson's Dictionary of Law; Boone's Law of Corporations, sec. 101; *Riche* v. *Ashburg Railway Car Co.*, L. R. 9 Exch. 244–262; Beach on Private Corporations, vol. 2, pp. 422, 425; Morawetz on Private Corporations, sec. 100; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 68; *Steam Nav. Co.* v. *Weed*, 17 Barb. S. C. R. 378; *P. & S. R. R. Co.* v. *Thompson*, 103 Ill. 202, 203; *Bradley* v. *Ballard*, 55 id. 413; *Heims Brew. Co.* v. *Flannery et al.*, 137 id. 309; *McNab* v. *McNab & Harlin Mfg. Co.*, 16 N. Y. 448; *Schurr* v. *N. Y. & B. Sub. I. Co.* (Com. Pleas. N. Y.), 18 N. Y. S. 454.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

On the 5th of July, 1886, Leopold J. Kadish and Ernest Kadish, being stockholders in the Pilsen Brewing Malting Company became members of The Garden City Equitable Loan and Building Association, and each borrowed from it $10,000, giving their individual bonds therefor. The money so borrowed was used for the benefit of the Pilsen Company,

and it gave the loan and building association a deed of trust on all its real estate to secure said bonds.

Subsequently, the Chicago Co-operative Brewing Association, an Illinois corporation, became the successor of the Pilsen Company, acquiring all of its property, and assuming the payment of the above mentioned bonds. On August the 30th, 1887, this latter corporation subscribed for certain shares of stock in the loan and building association, and borrowed from it $5,000, giving its bond therefor, signed by its president and secretary, secured by a second deed of trust on the real estate obtained by it from the Pilsen Company.

The payment of this bond was further secured by the personal guarantee in writing of Leopold J. Kadish, George Heinzman, J. F. Buehrer, Herman Nathan, Joseph Schroeder, Herman Fink, Thomas Nalipinski, and Louis Groskopf, the then directors of the Co-operative Association.

On the 18th of September, 1888, appellant, Albert Florus, took judgment by confession on a promissory note, executed to him by the Co-operative Association while he was one of its directors. Two days later Leopold J. Kadish, as a stockholder, filed his bill, in the Circuit Court of Cook county, for the purpose of winding up the affairs of the corporation, making the loan and building association and Albert Florus parties defendant. The loan and building association filed a cross-bill to foreclose the trust deeds held by it, as above stated, claiming priority over the general creditors of the corporation, and the Circuit Court decreed accordingly. The mortgaged property having sold for less than the amount found due, a deficiency decree was entered against the said guarantors, who had been made parties to the cross-bill, and they, together with Florus, appealed, first to the Appellate Court, and now to this.

Albert Florus insists that the Circuit Court erred in holding the trust deeds in favor of the loan and building association valid prior liens to his judgment, and the other ap-

pellants, that it erred in holding them liable on the deficiency decree as guarantors. In support of both of these contentions, it is claimed that the trust deeds sought to be foreclosed were void, because taken in violation of our statute, authorizing the organization of "Homestead Loan Associations." This position is based upon the following propositions:

1st. The loan to the Kadishes was, in fact, a loan to the Pilsen Company, and, therefore, it, as well as the $5,000 loan to the Co-operative Association, was to a corporation. But loans can only be made, under the statute, by homestead loan associations, to members, and as one corporation can not become a member of another, neither the Pilsen Company or the Co-operative Association could become members of the loan and building association.

2d. Both loans were for general business purposes; whereas, homestead loan associations in this State can only lawfully loan money to build homes.

In our view of the law applicable to this case, all that is here claimed may be conceded, and still the trust deeds in question would not be void. There was in the transactions of loaning money to the corporations, and taking those trust deeds to secure the repayment of the same, no violation of the express provisions of the statute regulating the loaning of money by homestead loan associations. The only sections of that act, bearing upon the question, are in the following language:

Sec. 7 (ch. 32, par. 74, S. & C., vol. 1, 631). "Married women may become subscribers to the capital stock of such association, and hold, control and transfer their stock in all respects as *femmes sole*, and their stock shall not be subject to the control of or liable for the debts of their husbands. Minors may become subscribers to and owners of the stock of such associations by guardian or trustee, and such guardian or trustee may withdraw the stock of such minor, as provided in section 6 of this act: Provided,

however, that such guardian or trustee shall have given bonds to the probate court in double the amount of the withdrawal value of such stock, for the use of such minor,. on his or her becoming of age; but it is hereby provided, that no person, as owner or legal representative of the stock of such association, shall, by himself or by proxy, vote at any election, when the stockholders are called upon to vote on more than forty shares of stock."

Sec. 8. "The board of directors shall hold such stated meetings, not less frequently than once each month, as may be provided by the by-laws, at which the money in the treasury, if $100 or more, shall be offered for loan in open meeting; and the stockholder who shall bid the highest premium for the preference or priority of loan, shall be entitled to receive a loan of $100, less the premium bid, for each share of stock held by said stockholder: provided, that no loan shall be made by said corporation except to its own members, nor in any sum in excess of the amount of stock held by such members borrowing: and, provided, that such stockholder may borrow such fractional part of $100 as the by-laws. may provide. Good and ample real estate security, unincumbered, except by prior loans of such association, shall be given by the borrower, to secure the repayment of the loan: provided, however, that the stock of such association may be received as security to the amount of the withdrawal value of such stock."

It is not denied that these loans were made to actual members. All that is insisted upon in that regard is that the borrowers, though in fact members, were not legally so, because ineligible to membership. That being admitted, the question still remains, can the borrowers, being themselves parties to the illegal acts attempted to be set up here, escape liability upon their contracts to repay the money to the lender? There is, as above shown, no prohibition in the statute against corporations becoming members of homestead loan associations for the purpose of

borrowing money; neither is there any prohibition therein against loaning money for other than building purposes. In other words, the transactions were, at most, *ultra vires*, in the commonly understood sense of those words, and nothing more.

As said in *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62, cited with approval by this court in *Darst* v. *Gale et al.*, 83 Ill. 141, "the acts were not immoral in themselves or forbidden by any statute, neither *mala in sese*, or *mala prohibita*, so as to make the contract illegal and incapable of being the foundation of an action, such a contract as the law will not recognize or enforce, but applying the maxim, *ex facto illicito non orator actio*, leaves the parties as it found them." It is also said in that case: "When acts of corporations are spoken of as *ultra vires*, it is not intended that they are unlawful, or even such as the corporation can not perform, but merely those which are not within the power conferred upon the corporation by the act of its creation, and are in violation of the trust reposed in the managing board by the shareholders, that the affairs shall be managed and the funds applied solely for carrying out the object for which the corporation was created.   *   *   * It is now very well settled that a corporation can not avail itself of the defense of *ultra vires*, when the contract has been in good faith fully performed by the other party, and the corporation has had the full benefit of the performance of the contract.   *   *   *   The same rule holds *e converso*.

If the other party has had the benefit of the contract fully performed by the corporation, he will not be heard to object that the contract and performance were not within the legitimate powers of the corporation." (Citing the authorities.)

So this court said, in *Benefit Association* v. *Blue*, 120 Ill. 128: "It will be observed that the contract involved is not absolutely prohibited by statute, all that can properly be claimed is, that it was not expressly authorized by the

statute. The defendant voluntarily issued the policy. It received the premium, and Bailey fully, so far as appears, performed all that his contract required him to. So far as he is concerned, the contract is an executed one. Now, upon the death of Bailey, when the defendant is called upon to perform its part of the contract, can it refuse and defeat a recovery by claiming that the contract is *ultra vires?*"

The question was answered in the negative, on the authority of *Bradley* v. *Ballard*, 55 Ill. 415; *Darst* v. *Gale*, 83 id. 136; 2 Morawetz on Corporations, 689. While a contract *ultra vires* remains executory, courts will interfere to prevent its enforcement, or, on the application of a shareholder or other authorized persons, prevent its execution, but when it has been carried into effect, and the corporation has received the benefit of it, it can not plead the excess of its power in discharge of its liability. *Bradley* v. *Ballard, supra.* And, "If the other party has had the benefit of a contract fully performed by the corporation, he will not be heard to object that the contract and performance were not within the legitimate powers of the corporation." *The Whitney Arms Company* v. *Barlow, supra.* For a full discussion of this doctrine, see 2d Beach on Private Corporations, sec. 425 *et seq.*

The plea of *ultra vires* should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but, on the contrary, would accomplish a legal wrong. Id. See, also, *Carson City Sav. Bk.* v. *Elevator Co.*, 90 Mich. 550; *Holmes & Griggs Co.* v. *Metal Co.*, 127 N. Y. 252 (A. S. R. 24, 448). All the decisions on this question naturally rest upon the rule "that where a party has accepted and made his own the benefit of a contract, he has estopped himself from denying, in the courts, the validity of the instrument by which those benefits came to him." Parsons on Contracts, vol. 2, 790.

Had the contracts been void, and not merely *ultra vires*, *Penn* v. *Bornman et al.*, 102 Ill. 523, and cases there cited, would have supported the position of appellants, but as the case is presented, they have no application.

If, then, the question was between the original parties to the loans, there would seem to be no doubt as to the correctness of the decree of the Circuit Court. Are either of these appellants in a position to urge the defense of *ultra vires* on behalf of the Pilsen Brewing Company or the Chicago Co-operative Brewing Association, these companies themselves not being in a position to have done so? Albert Florus contracted his debt, and the other appellants their liabilities as guarantors, chargeable with constructive notice of the rights of the loan and building association against the property of the Brewing Association, by the record of the trust deeds, and also with actual notice, by reason of their official positions in the Brewing Companies. No fraud, in fact, is alleged or attempted to be proved in the making of the loans. The money was actually loaned, and the borrowers had the full benefit of it. There is nothing in the record tending to show that appellants were injured or misled to their prejudice by the transactions. The contracts being enforceable between the parties thereto, can not be avoided by them.

On the point that the decree of foreclosure is too large, the argument proceeds upon the assumption that, in an action upon a contract *ultra vires* for money loaned, the lender can only recover the sum actually borrowed, and, therefore, in this case, the borrowers were entitled to credits for interest and dues paid. We are aware of no such rule of law. The contract, if enforceable at all, is to be enforced as the parties made it, and its terms and provisions must govern their rights. If *void*, then, of course, no recovery whatever can be had upon it.

The questions as to whether, under a proper construction of our statute, corporations for manufacturing purposes

should be allowed to become members of homestead loan associations, and whether such associations should be allowed to loan money for general business purposes, are very important ones, but the decision of them not being necessary to the determination of this case, we have purposely avoided deciding them.  The judgment below will be affirmed.

*Judgment affirmed.*