GRANT M. KRESS, Appellant, *v.* THE VILLAGE OF WAT-
KINS GLEN et al., Respondents.

(Argued March 12, 1935; decided April 16, 1935.)

*W. S. O'Brien* and *Seaman F. Northrup* for appellant.

*Harold H. Cassidy* and *Olin T. Nye* for Frank W. Severne et al., respondents.

CRANE, Ch. J. The village of Watkins Glen was incorporated under a special charter (Chapter 125 of the Laws of 1861, and chapter 36 of the Laws of 1918). The charter provided the qualifications for voters at village elections. Section 12 of title 3 (L. 1918, ch. 36) reads as follows:

" Legal voters. Every inhabitant actually residing in said village, who shall have been such actual resident of said village for thirty days next prior to the time of offering his vote and who shall at the time of offering his vote be qualified to vote for member of assembly, shall be entitled to vote for all officers to be elected by virtue of this act; and also every person residing in the towns of Dix and Reading, who owns real estate in the said village to the value of one hundred dollars and over and whose place for the transaction of his ordinary business is in said village if otherwise qualified as hereinbefore specified, shall in like manner be entitled to vote for said officers."

This special charter also provided the qualifications of electors to vote on propositions. Section 75 of title 8 (L. 1918, ch. 36) of the special charter reads as follows:

" Qualifications of electors for voting on certain propositions. No elector shall be entitled to vote upon any question, resolution or direction relating to the raising of money by tax or the disposition of any funds or property of the corporation unless at the time of offering to vote upon such question, resolution or direction he shall be liable to be assessed and taxed for personal estate possessed by him in said village or for real estate therein owned or occupied by him."

The Village Law (Cons. Laws, ch. 64, § 41, subd. 2) is a general law governing by its provisions all those villages which are created under it or have been reincorporated according to article 13 of the law. The village of Watkins Glen, acting under its original charter, determined to reincorporate under the Village Law. The

question arising in this case is whether it has succeeded in so doing by a compliance with the provisions of law providing for such reincorporation. The appellant claims that the village has failed in its purpose because the proposition to reincorporate was not carried by a sufficient number of legal voters; that there is no way in which the village can reincorporate under the Village Law except in the method provided by article 13 of that law. Section 300 of that article reads:

" A village incorporated by special law and subject to its provisions may be reincorporated under this chapter by adopting a proposition therefor. Such a proposition may be submitted at an annual election or at a special election to be called for that purpose.

" The board of trustees of such village may, upon its own motion, and shall, upon the petition of twenty-five electors assessed upon the last assessment-roll of the village, cause to be submitted at a village election a proposition for such reincorporation. * * * "

Notice will be taken that the proposition is to be submitted at an annual election or at a special election, but nothing is said regarding the qualification of the voters upon such a proposition. This, however, is found in other portions of the Village Law, under the proper heading, " Qualifications of voters," being section 41 of article 3. It reads:

" A voter at a village election, other than the first, must possess the following qualifications:

" 1. To entitle him or her to vote for an officer, he or she must be qualified to vote at a town meeting of the town in which he or she resides, and must have resided in the village thirty days next preceding such election.

" 2. To entitle him or her to vote upon a proposition he or she must be entitled to vote for an officer, and he or she must also be the owner of property in the village assessed upon the last preceding assessment-roll thereof."

The difference between the special charter and the

Village Law regarding qualifications for voters when voting on propositions, as distinguished from voting for officers, is this: That under the former, the elector must be assessed and taxed for personal or real estate when the proposition relates to raising money by tax, or the disposition of any funds or property of the corporation; while under the latter he must be such a taxpayer to vote on any proposition.

A special election was held in the village of Watkins Glen on the 28th day of November, 1933, to vote upon the proposition, reading as follows:

" PROPOSITION No. 1.

" Shall the Village of Watkins Glen, N. Y., be reincorporated under the Village Law of the State of New York, being Chapter 64 of the Laws of the State of New York for 1909, and the acts amendatory thereof? "

The election was not confined to those who owned personal or real property within the village, but all those were permitted to vote who could vote for village officers under the special charter, to wit, those qualified to vote for members of the assembly. It is conceded, for the purpose of this motion, that if the property qualification was required, the proposition was lost.

We are of the opinion that the general Village Law applies, and that only those voters who were qualified, pursuant to section 41 of that act, could vote at this election. The special charter, as before stated, gives no power by reason of any of its provisions to reincorporate under the Village Law. The propositions to be submitted to the People under the special act are those to be voted for in accordance with the provisions of that act. Only by reason of the general Village Law, and not the special charter, can a proposition to reincorporate be submitted to the villagers. No such proposition could be submitted under the special charter. Therefore, it seems quite reasonable, when the proposition is one which could only

be submitted under the general Village Law, that the voters should be those qualified under that law. This reasoning is further supported by the fact that only property owners can vote on the original incorporation of a village. (Village Law, art. 2, § 12.)

This being our decision, it perhaps is unnecessary to call attention to the fact that even under the special charter of the village of Watkins Glen, it is very doubtful whether non-property owners could vote to reincorporate. Passing the village from the control of the authorities known as the village of Watkins Glen, incorporated under a special charter, to a reincorporated village, a new village of Watkins Glen, incorporated under the Village Law, is in one sense the disposition of the funds and the property of the corporation by transferring it from the control of one corporate body to that of another. Even under the special charter it is doubtful whether any but voters assessed and taxed for personal estate or for real estate were qualified to vote.

Some objection has been raised to the form of this action, which is in the nature of a declaratory judgment establishing the rights of the parties and seeking to have the courts determine that the election was illegal or that the proposition to be voted upon was lost. We have had these questions before and determined that, when the question as to the validity of the incorporation of a village or the right of officers thereunder to act was raised as soon as possible, resort to quo warranto was unnecessary. Where, however, the long-established usage had developed into a government *de facto*, other forms of remedy could not be resorted to. (*Jarl Co.* v. *Village of Croton-on-Hudson*, 258 N. Y. 303; *Gwynne* v. *Board of Education*, 259 N. Y. 191.)

The complaint, with its exhibits, is the only pleading which can be considered in this case. A motion was made to dismiss it on the ground that it failed to state a cause of action, and on the further ground that the court had

no power to determine the validity of the incorporation of the defendant under the general Village Law. The Special Term granted the motion, and dismissed the complaint, and the Appellate Division has affirmed the order. We reverse both these orders, and deny the motion, with costs in all courts.

The judgment and order should be reversed and the motion denied, with costs in all courts.

CROUCH, J. (dissenting). This decision overturns what has been the accepted law and practice since 1870.

The original provisions relating to reincorporation of villages will be found in section 30 of title 8 of chapter 291 of the Laws of 1870. That act appears to have been the first general act relating to the incorporation of villages. Section 30 of title 8 provided that, "All persons before qualified to vote at an election in such village may vote at such election," that is, at an election upon a proposition to reincorporate. That was plain enough; and the statute continued in that form down to the enactment of the Village Law of 1897 (Laws of 1897, ch. 414). By that act the provisions in the older statute relating to reincorporation were cast into substantially their present form and constituted a separate article, as at present. The specific provision quoted above relating to the qualification of voters did not appear. It was, however, provided, as it now is, that if the proposition were submitted at a special election, that election should be conducted in the same manner as provided by law for an annual election in such village. The fair inference is that no change in what had been the qualifications of voters on the proposition to reincorporate was intended to be made. That, indeed, seems to have been the view of the Commissioners of Statutory Revision who drafted the act of 1897. In their note they say:

"A special village is made subject to such of its provisions as do not conflict with its charter. A special village is authorized either to continue under its charter

in connection with the proposed general law, or to abandon its charter and adopt the provisions of the new law by reincorporation thereunder." (Report of Commissioners of Statutory Revision [1897], p. 86.)

"It is a rule of construction that a special statute providing for a particular case, or applicable to a particular locality, is not repealed by a statute general in its terms and application unless the intention of the legislature to repeal or alter the special law is manifest, although the terms of the general act would, taken strictly and but for the special law, include the case or cases provided for by it." (*Buffalo Cemetery Assn.* v. *City of Buffalo*, 118 N. Y. 61, 66; *Van Denburgh* v. *Village of Greenbush*, 66 N. Y. 1.)

"Laws, special and local in their application, are not deemed repealed by general legislation, except upon the clearest manifestation of an intent by the legislature to effect such repeal, and ordinarily an express repeal by some intelligible reference to the special act is necessary to accomplish that end." (*People* v. *Quigg*, 59 N. Y. 83, 88; *Jamestown* v. *Home Tel. Co.*, 125 App. Div. 6; *Aldinger* v. *Pugh*, 57 Hun, 188.)

Shortly after the revision of 1897 inquiry was made of the Attorney-General as to the qualifications of voters upon the question of reincorporation. The opinion rendered was to the effect that any person having the qualifications prescribed by a special village charter was entitled to vote upon the proposition to reincorporate under the general Village Act. (Report of Atty.-Gen. 1897, p. 332.) The same conclusion was reached in the only adjudicated case on the question. (*Matter of Sag Harbor*, 32 Misc. Rep. 624 [1900].)

When the Special Term and the Appellate Division decided the present case, they applied what had always been understood to be settled law.

Apart from the desirability of uniformity, I can see no reason for the rule now announced. But that is a legis-

lative and not a judicial consideration. Moreover, it seems clear that the Legislature considered the point and found it either impractical or undesirable upon other grounds. The undoubted rule of construction and the clear intent of the draftsmen of the Village Law was known to the Legislature from the report of the Statutory Commissioners. As stated, the intent was that " a special village is made subject to such of its [general Village Law] provisions as do not conflict with its charter." Knowing that special village charters defined variously the qualifications of voters at village elections, the Legislature in article 13, relating to reincorporation, deliberately omitted any specific provision on the subject. On the other hand, in article 3, relating to original incorporation, where a prescribed area was to be taken from a town and made into a village, the qualifications of those who could vote on the proposition were clearly defined. There is good reason for the distinction. The change from town to village government ordinarily entails an increase in taxes. The increased burden falls on property owners. Their vote alone should control. Hence to the qualifications of a voter at a general town meeting was added the qualification that he should be a property owner. No such consideration is involved in a change from village government under a special charter to village government under general law. The differences are largely matters of form and detail.

Upon every principle of statutory construction, it seems to me that the Legislature intended the provisions of special charters defining the qualifications of voters to apply at an election for reincorporation.

The judgment should be affirmed, with costs.

O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur with CRANE, Ch. J.; CROUCH, J., dissents in opinion in which LEHMAN, J., concurs.

Judgment and order reversed, etc.